May please the court. The district court's dismissal on race judicata grounds is error. No dismissal based on race judicata can occur without a decision on the merits in the first case. A lack of standing dismissal cannot be a basis for race judicata. The release Mark Ratcliffe signed that was the basis of the first case stripped him of Article 3 standing. The Gbert case in the 8th Circuit is directly on point and its reasoning and decision compel the conclusion here that Mark Ratcliffe was stripped of Article 3 standing. Thus the dismissal of the Ratcliffe case by this court based on that release was not a decision on the merits and cannot serve as a basis for race judicata. The fact that the decision was designated as with prejudice, that was actually a decision with a basis of a Rule 9 that the complaint did not comply with Rule 9. But in any case, the 8th Circuit decision in Barris teaches that the principles of the Supreme Court's decision in Costello require that a dismissal for lack of jurisdiction, even if it's denominated as being with prejudice, cannot be regarded as a decision on the merits for purposes of race judicata. Let me ask you, do you think our decision was that he didn't have standing? Yes. I think that the essence of the decision was clearly that because basically the release stripped him of Article 3 standing to even bring the suit and to represent and advocate for the government's claim of fraud against it. A Keaton case, the later is bringing the case on behalf of the government. The merits of the case is the claim of fraud against the government. In the Ratcliffe case, the first case, that was never reached because he did not have standing. He had basically given up his right to bring the case when he executed the release. Gebert is right on point that that's the case. And also, the Rhodes case, Rhodes v. DuPont, this Court's decision basically held that a class representative, once they settled their personal claims, no longer had standing to continue with the lawsuit. We don't dispute that Mr. Ratcliffe had standing at one point, but by the time he filed his lawsuit, he had given away that standing. He'd been stripped of that standing by executing his release. So therefore, they're simply applying a controlling law on the principles of res judicata. The decision to dismiss based on res judicata is an error. It's simply not reconcilable with those decisions. And it matters not that that occurred at the summary judgment stage? I mean, that seemed to be what the District Court was hanging its hat on, that because this occurred at summary judgment, and we have apparently said, albeit in unpublished decisions, that a summary judgment is always considered a disposition on the merits? Yes. It simply can make no sense that you can circumvent a Supreme Court mandate and well-established principle of law, that a dismissal based on lack of standing is not a decision on the merits, by simply putting a different label on it or reaching that decision through the vehicle of a summary judgment versus a motion to dismiss. Again, this is controlling Supreme Court law, and so I think that in general, that's true, that a decision based on summary judgment, that's reached in a summary judgment, would be with prejudice and would be on the merits. But this is a clear exception, because if you have no standing, regardless of how you get to that, the court gets the decision, it's simply not a decision on the merits. The Purdue Let me ask you, didn't we say in Radcliffe he had the right to file the suit beforehand, the right he waived under the terms of the release? Exactly. And where do you get a lack of standing? He had the standing before he executed the release. Once he executed the release, he was stripped of that standing. Just like in Gebert, they said the relator was stripped of standing because of the settlement and release. Again, I'd like to clarify the Gebert case, because I think it's very important. Purdue tried to draw a distinction between the assignment of the Keatam case by the relators that took place as a matter of law, because they failed to disclose it in their initial bankruptcy filing. So if you don't disclose a potential claim, it automatically goes to the bankruptcy estate. However, the case is clear in pointing out that there was also a settlement and release of those claims as well. And the Eighth Circuit in Gebert makes it clear that under the settlement and release, that was also an additional reason for why the Geberts did not have standing, that basically they had stripped them of their standing to bring the Keatam case. So therefore, it's clear, I think, that Ray Giudicato applies here. And again, the contrary result is really absurd, because the government was not a party to the release. And this was made clear in the Radcliffe proceeding in the first case, was both the government and the relator was free to bring another Keatam case, that this would not bar, this release would not bar it. However, this argument has no force if, okay, the release does not bar it, but the adjudication of the release would bar it. And that's exactly what Purdue's argument is. It makes no sense. The government took its position because it understood that a release and a dismissal based on a release would not bar the government and would not bar another relator from bringing a case. And this, you know, the expanding the effect of this first case on the basis of Ray Giudicato to preclude the government, to preclude another relator from bringing a case would, in effect, rewrite the release. The release was very stark Radcliffe. However, Purdue wants to have it both ways. They want to argue, okay, the release didn't, you know, if you enforce the release, the release does not bar the government or another relator from bringing a new action. However, once they get the ruling, now they argue, well, it does bar the government. It does bar another relator from bringing the case. So they want to have it both ways. Well, I can see a distinction between another relator who might not have knowledge of the case and suffer the consequences of a previous litigants decision to release the claim. But the government knows about the case from the get-go. They have the right to intervene and any dismissal has to occur with their knowledge. So why shouldn't a different rule apply with respect to them? And maybe that's not a question for you to answer. Because the government should have a right to the correct applications of Ray Giudicato principles here just like in any other case. But part of those Ray Giudicato principles are principles of efficiency and not, you know, needlessly wasting judicial resources. And if the government has knowledge of this lawsuit, they choose not to intervene, they have knowledge of the release, then why shouldn't it apply, why shouldn't the result apply with respect to it? Well, because of Ray Giudicato. But the design of the False Claims Act and the granting the ability to go forward without the government was designed because the government is understaffed. They simply do not have the ability to intervene in every case and take action in every case. The law is designed for the relators to go forward on their own. And if the government sees this meritorious but simply doesn't have the resources, then that relator can take the case forward. Well, Counsel, in Radcliffe, directed you to footnote 8, it states the release, of course, did not prohibit the government or another relator from pursuing similar claims against Perdue. Why would the court have said did not instead of does not? Doesn't that suggest that although the government or another relator could have filed similar claims earlier, they could no longer because the claim was dismissed with prejudice? I think that if you look at the briefs and the argument, everyone understood that another relator or the government could bring another case. And as the government said in Samika's brief, they never would have taken that position if the understanding was that they would be barred from going forward with the claims themselves after the dismissal. I want to pull you back. Sorry, you're getting pulled into different subjects. I want to take the standing question. Do you see anywhere in the opinion where we said he lost standing? No, Your Honor. But the essence, the clear essence of the opinion as taught by Gebert and other cases is that that was the net result. When you enforce the release, you basically in effect said that release stripped him of his ability to bring the lawsuit. I don't think we're just enforcing a contractual obligation. Well, for instance, in the patent area, that happens all the time. You enforce the assignment, the person's assigned the patent to someone else. But the net legal result, which courts have concluded, is that that strips that person of standing to bring the claim. He has no patent holder can bring the case. But courts have regularly determined that the person who transferred it no longer has standing, and that's the analysis that they used, not that they're just enforcing a contract. I would like to say that, point out that Purdue brought up another, a couple of other bases for alternative basis for upholding the dismissal. Both of those bases are precluded because the district court simply didn't address those. In Rule 9B, the First Circuit has pointed that out, that you really need to have the district court rule on that issue and for the circuit court would use it as an alternative basis. The same thing from public disclosure bar, the new Carter case that came down in this court makes it absolutely clear that the district court needs to make the factual findings on public disclosure before the circuit court can make a ruling on it. The other alternative basis, and also Carter basically eliminated the first to file, which Purdue concedes as an alternative basis. The other two alternative basis simply don't apply here. Thank you. Mr. Whitaker. May it please the court, Henry Whitaker for the United States. I just want to make sure that the court understands that whether res judicata applies here does not stand or fall on whether the release would deprive the relator of Article 3 standing. I mean I think it was a non-merits grounds for dismissal that did not trigger res judicata regardless of whether it was formally jurisdictional. And it's important to understand that there are any number of bases for dismissal under the False Claims Act whereby a relator is not eligible to bring a claim that do not preclude the United States or another relator from bringing the same claim. And the Fifth Circuit considered one example in the Williams case under Rule 9B. That was a Rule 9B dismissal. A couple other examples would be if a relator, let's say, violates, mistakenly does not file the complaint under seal. That can be a basis for dismissing a False Claims Act claim, but it clearly would not be a basis for saying that no other claim in that regard can be brought. Another example would be the public disclosure bar. I mean you can have a relator who may be basing his suit on a public disclosure and not be an example for dismissal. And indeed may be bases for summary judgment in some cases, but they clearly would not be dismissals on the merits with res judicata effect as to the government or another relator, which would be a result that would seriously undermine the anti-fraud purposes of the False Claims Act. And Your Honor, another important res judicata principle that is applicable here is that, look, when you have a judgment that is based on a release, you have to look at the scope of the release to figure out the scope of the judgment. Because it's often the case that you can have a release or a settlement agreement and it may carve out certain claims that may be part of the same transaction or occurrence. And simply because the dismissal is on the basis of that settlement agreement doesn't somehow expand the claim preclusive effect of a judgment based on that settlement agreement. And I think that principle is very applicable here because there's no dispute here that the release did not and could not bind the government or another relator. And I think it follows that a judgment of dismissal that is based on that very same settlement agreement does not and cannot bind the government or another relator under principles of res judicata from bringing the same claim. And Judge Diaz, I do want to address your point head on, which is, yes, it is true, as it is true in some of these other examples of the cases that I've indicated where there may be, when the government, when there's a deficient relator, the relator's claim is deficient in some way and the relator himself is not eligible to claim, yes, it's possible in theory for the government to take over that and intervene. But you shouldn't hold the government to that one and only shot at that suit. And again, the False Claims Act contemplates that a key TAM relator is going to serve as an enforcement partner with the government. And a key TAM relator who has, for example, released his claim or is some, in some other respect, ineligible, is a singularly poor enforcement partner. Has little, I think, would have little incentive to, for example. But isn't that why the statute contemplates that the government can come in and take over the case and proceed? And it just seems to me grossly inefficient to have the government wait, allow a judgment to enter, and then start all over again. Well, but, I mean, I think as the Fifth Circuit noted in the Williams case, I mean, it may be that the relator, because he's released his claim or because he hasn't done a sufficient investigation and that, and his complaint is not sufficient, it may be that, that, that  You don't make that allegation in this case. I mean, I get the argument that you say perhaps a procedurally defective complaint might be a grounds for the government not to be interested to litigate that case, but there's no evidence of that here. It's just, there's a release, we're not bound, we get to start all over again. Is it that simple? Yes, it is that simple, Your Honor. And you can't, you can't decide the reason to cut a point, Your Honor, based on the specific facts about how adequate the government, the government's investigation is in this case, or why the government didn't intervene. The government cannot, can choose not to intervene for any number of reasons, including the fact that it lacks the scarce enforcement resources to fill in, to end the Fifth Circuit's decision in Williams' words, fill in the blanks of a deficient complaint. And the government shouldn't have its one and only shot at enforcing a False Claims Act claim in a case involving a deficient relator who has no incentive to help, and may have had no incentive to plead a good claim in the first place. The government is entitled, I think, to wait until you, for a better, a better relator. And more importantly, Your Honor, though, in the prior Purdue Pharma case, this court, and I see that my time has expired, if I could finish my thought, at least. In the prior Purdue Pharma case, Your Honor, this court premised enforcement on the government or another relator from pursuing the same claim. Well, Judge, Judge Groh asked the question of your colleague about exactly what that language in the footnote was intended to mean. She pointed out that the language says that the release, of course, did not prohibit, suggesting that perhaps a lawsuit by the government or another relator prior to the ultimate entry of dismissal, in this case, was not prohibited. Not that the government or a relator could then subsequently come behind that judgment and start the process all over again. Well, I agree that that footnote certainly does not necessarily suggest that it wouldn't be raised judicata, but I think I was talking more about just the rest of the body, the opinion, and why the court, and indeed every other court of appeals to address why releases are enforceable, should say that these things are enforceable. And the reason for that, as I was trying to suggest, is that, or a critical component of saying that those releases are enforceable is to say, look, it doesn't preclude the government or another relator from bringing the same suit. And yet, if you hold that raised judicata would forever preclude the government, no other relator would ever have a shot at enforcing this claim. And I think that that is in some basic tension with the reasoning and premises behind the holdings of all of the courts of appeals, including this court, to say that these releases can sometimes be enforced. And indeed, I participated in the prior Purdue Pharma case, and I can tell you that I think it was a critical component of the government's position that these releases would not preclude the government or another relator from bringing the same claim. And I understand your point, Judge Groh, that it was specific to that release. But I mean, to say that, well, it would be pretty odd, I think, to say that, look, if this relator who filed a key TAM action that he is not entitled to file because he released his claims, that precludes. But if he had just chosen to sit on the sidelines and done what he was supposed to do and not file, then it's open season. It's a pretty odd result. I mean, and I don't think the fact that the key TAM relator chooses to file a claim that he's clearly not entitled to file should prejudice the rights of the government or another appropriate relator from bringing the same claim. It would undermine the anti-fraud purposes of the False Claims Act, and it's not required by raised judicata principles. In fact, it's contrary to them. Okay. Thank you very much. Mr. Shapiro. Thank you, Your Honor, and may it please the Court. Raised judicata is an appropriate basis for dismissal of this case. The decision in the Mark Radcliffe case was not a threshold determination regarding the power of the Court to hear the matter, and it was certainly not a decision on the basis of standing of the relator to bring it. It was instead an exercise by the Court of its power to resolve disputes and a decision that Mark Radcliffe's release should be enforced. That decision was made on summary judgment, as Judge Diaz pointed out, on the basis of an affirmative defense pled by Purdue. And it was a decision that went to the question of whether the plaintiff's claim should ultimately succeed or fail, not to a threshold question of whether the Court had the power to consider it or not. It was therefore a decision on the merits. As to its applicability to others, Mr. Hurd has never disputed in his briefs or otherwise that, in fact, he's conceded that the relators in this case, Angela Radcliffe and Stephen May, are, for purpose of raised judicata analysis, the same. They say government is a real party in interest in both matters. It is, of course, the government's claim, and so there's no dispute about its applicability to Angela Radcliffe and Stephen May. The government, as we've just heard, contends it would somehow be unfair to hold it to the failings of Mark Radcliffe as a relator. But we heard nothing about the Supreme Court's decision in Eisenstein which really addresses that point. As Judge Diaz's point made before, False Claims Act provides multiple statutory safeguards that allows the government to protect its interests in a key time suit if they're jeopardized by a particular relator. It can obviously intervene at the outset of the case. It can monitor, as it has here, the litigation and then intervene thereafter for good cause. It can file papers with the court at any stage to protect its interests, either under the False Claims Act or pursuant to 28 U.S.C. 517. What it cannot do, what it cannot do and what the government is arguing for here is watch a suit go forward, take its chances with the first relator, and then preserve its ability to have a second bite at the apple if the relator fails in his claim. If the government doesn't want to put its eggs in the relator's basket, then it must avail itself of one or more of the procedural protections. In this case, they did not do that. And as the Supreme Court said in the Eisenstein decision and as the Ninth Circuit applied also in In Res Chimels, the United States is bound by the judgment in all False Claims Act cases regardless of its participation in the case. And that's what Mr. Whitaker is not addressing here. They made a decision. They made a decision. Frankly, we know from the record here that they had thoroughly investigated this matter. They, in fact, advised counsel for Purdue that they weren't intervening because they thought the matter didn't have merit. That's in a letter that's referred to in a footnote in our brief. And for them to now say they shouldn't be bound because maybe we would have proceeded otherwise is not consistent with the law. Paul, but none of those cases that you talked about deal with a release claim, right? They do not. They deal with other procedural defaults. Like in the Eisenstein case, they didn't file their Notice of Appeal within the 30 days thinking that they had the full 60 days that the government would have. So it was, again, a procedural release in the Shimmels case. It was, again, a procedural default because the relator had failed to respond in time and therefore was ruled against. And the government was in that case monitoring it and didn't jump in. And the court there said, you know, you're bound by the actions of the relator. Well, I can understand how the actions of the relator during the course of litigation should and could bind the government. But this is different, right? I mean, this is a pre-filing release. The government had no control over that, nor did any other relator. That's absolutely right, Your Honor. And that's why we've always acknowledged, and this court in footnote 8 noted in the earlier case, at that point, that release did not bind the government. That release did not bind any other relator. That's what footnote 8 says. And that's, of course, right. Once it becomes a False Claims Act matter in litigation, the government has to make a choice. They made a choice here. They made a choice not to intervene. But now they don't want to be bound by the consequences of that choice. Mr. Whitaker argued that the government agreed, or at least prevised, its concession with respect to this resolution of this case on its understanding that they would not be bound and would be able to litigate going forward, and that no one actually questioned that. Is that accurate? Well, it's not apparent from any of the filed documents in this case. In the brief that was filed in the previous matter, the government's statement was that a settlement does not bind the government, which is the same point that's made in footnote 8 about the release itself does not bind the government. So I obviously can't speak to what Mr. Whitaker or the government had in their mind at the time, but it was, the Eisenstein decision came down in 2009. They were surely on notice of the fact in 2010 when the Mark Radcliffe case was argued that they had to protect their rights. And as we've seen, we pointed to in our briefs, there are ways the government can do that even at the last minute with a filing under 28 U.S.C. 517 that asks the court to specifically say that any decision here is not applicable to the government. It's specific to this for later. Now, whether or not the court would have done that, obviously I can't say, but they made no attempt to do that. They did not make that effort, and now they don't want to be bound under res judicata in a situation when they clearly should be. I'm sorry. Chief Justice. Have you ever argued that the language of the release encompasses the claims of the government? The language of the release itself just released. Just rather. Just as directly. And if that was the basis for our prior decision, that he has released his claims, then I don't understand the argument that somehow the government was bound by that. Well, the government wasn't bound by the release. The government is bound by the outcome of a false claims act litigation, whether it participates or not. And once... That's their claim hinges on that one question. Yes. And again, they, you know, knowing of, and they were fully informed of the fact that move to dismiss on the grounds of release, of course, there was, in fact, discovery taken on that basis in the Western District of Virginia in the original case. They were fully, they were unnoticed throughout this, that that case that had been brought that they had chosen not to intervene in was imperiled by Mark Radcliffe's release. Again, they had the choice at that point, whether to intervene or otherwise act to protect their interests, which they did not do. Alternatively, the court could affirm this dismissal on public disclosure grounds as the government has asked the court to do. We agree with the government that the court could affirm on public disclosure grounds under either version of the statute, but we submit that the better argument is that the 2010 amendment, the 2010 version of the public disclosure bar, as this court explained in Brown versus Thompson, when the Congress clarifies the meaning of a statute, just as when the Supreme Court resolves a circuit split, there's no issue of retroactive application. And in this limited way of the 2010 amendments, that's precisely what happened here. The Congress in amending the public disclosure bar in 2010 brought the statute unambiguously into line with the position of the overwhelming majority of the courts of appeals, indeed with the holdings of every court of appeals other than the Fourth Circuit. And that is a clarification, and as Brown versus Thompson and before that United States versus Montgomery County, also out of the circuit, said a clarification doesn't give rise to those concerns of retroactivity. How do you get around Carter, which would require, at least suggest that we shouldn't decide this in the first instance, we ought to send it back to the district court? So as I read Carter, Your Honor, what it says is in that matter, they're declining to do so and sending it back for fact-finding. There's no need, certainly if the 2010 provisions apply here, which is that the cases are substantially similar, the allegations are substantially similar, it would be an utter waste of judicial resources to remand when you have two complaints that are not only similar, but in fact portions of which are verbatim copies of. That's not the kind of matter that requires additional fact-finding at the district court, and that just prolongs an already prolonged litigation and burdens the district court. So this is a very different case than the Carter case, and I at least don't read Carter as enunciating an invariant rule that applies in all cases of the public disclosure bar. I would add that even if the court looked at retroactivity under the more searching land graph analysis, the 2010 amendments still should not be found to have an impermissible retroactive effect as to these relators. And the court will recall that in Gordon versus Pete's auto service, it said that the question under land graph is not whether an amendment to change the statute would have a potential retroactive effect, a disfavored one, in any case. It's whether it does in this particular case as to the particular people objecting. Are they somehow having their rights interfered with? The search, the analysis of their land graph, of course, is based on fairness concerns, principally a concern that a party should have an opportunity to conform its primary conduct with the law, and that it would be unfair to hold someone liable for conduct that was legal when it was done or to subject someone to materially different consequences than he or she would have faced when he or she first acted. For that reason, frankly, as almost all the cases cited pursuant to criminal liabilities on the defendant for acts that they took prior to the change, the only land graph consideration that even plausibly applies to Stephen May and Angela Radcliffe is the consideration whether it somehow impaired rights that they possessed when they acted. But of course, for purposes of the public disclosure bar, the conduct, the relevant conduct is the filing of the lawsuit. And in this case, unlike in some of the other cases cited by Mr. Hurt, the filing happened December 30th of 2010, a full nine months after the 2010 amendments took effect. Indeed, at the time of the amendment, on March 23rd 2010, Mr. Radcliffe, Mark Radcliffe's prior case was still pending. So there was no question no possibility, they had no right to file then. The first to file bar would have precluded their filing until after that. And by the time they had the ability to file, the 2010 amendments had taken effect. So there's not a retroactive effect that impaired any right whatsoever. So that's a completely alternative basis on which this court could affirm. Relators haven't even argued that they could survive the amended bar, and they couldn't for the reasons I said before. The verbatim copying from one complaint to another would clearly fail under the new bar, which requires dismissal of claims that are substantially the same as those that have been publicly disclosed. So again, that's a, Judge Diaz, I'd respectfully suggest a reason why when they're not even arguing, they could meet that. And when it's quite clear they couldn't, there would be no reason to remand for any further fact-finding or further extend this litigation. So our position is the court should affirm the decision below on any one of a number of grounds, on public disclosure bar, on race judicata, as on 9B provides an alternative basis as well. And let me just note for the record that while we're not advancing this point, our earlier argument about first to file bar in light of Carter, we do preserve that in the event that Carter is overturned. If there are no further questions. I'd like to make a brief point about the public disclosure bar and then cede the rest of my time to the government if that's permitted. As far as the Any objection to changing the order of argument? As long as you don't go over the total time. On the legislative history about the purpose of that, that was clarifying the law. Cites no case. It's been over three years since the amendment. There's been no case that has applied the new public disclosure bar retroactively. The bar, the amendment was simply, was not simply to clarify one aspect. It was a complete overhaul of the public disclosure bar. It eliminated the jurisdictional language. The government was given the power to veto the application of the bar in particular cases. The sources of disclosure that triggers the bar were narrowed and the requirements for qualifying for an original, to be an original source were relaxed. So it was basically a complete overhaul and revamping of the public disclosure provision. This exact argument was raised by the Wilson and the Graham County case. The oral argument took place before the change in the law and so we weren't able to argue this change in the law. But the Wilson filed a petition for a hearing raising this argument saying it was just a mere clarification law because there was a deep circuit split and the Supreme Court denied the petition rejecting the argument, the same argument that Purdue makes now. I'd like to, if there's no questions on the public disclosure issue, I would like to make the point that under the law as it stood when the conduct took place, it's a factual issue whether the public disclosure bar applies. It's whether the relators actually derived their allegations, their knowledge of the allegations from the public disclosure. Mark Radcliffe's wife has testified that she did not get that from the public disclosure but from a conversations with her husband, which is how a lot of co-workers who bring and others who bring these cases under the sealer decisions interpretation bring viable false claims act cases. They don't get the information directly but they get it from a non-public source, a conversation or something like that. These are very important cases and it would severely contract the scope of the False Claims Act as the Fourth Circuit has adjudicated it to apply that, to exclude those kinds of cases. I'd like to give the rest of my time to the government. Thank you. May it please the court, just two quick points. First of all on Eisenstein, Eisenstein clearly does not mean that a judgment not on the merits that's without prejudice to the government binds the government. I mean and Perdue agrees, certainly I thought Perdue agreed in its brief that there are certainly examples of False Claims Act judgments that don't bind the government. So the question is just as whether, the language in Eisenstein is neither here nor there. Eisenstein was just about whether a, he was just noting that the judgments, False Claims Act judgments can bind the government even though, as Eisenstein recognized, the government is not formally, may not formally be a party to the case for some purpose. That was the point of Eisenstein. It doesn't resolve this case at all. Second point I'd make is simply that yes, it's true that there are these procedural protections the government has, even in declined ETAM cases. There aren't those protections when a pre-filing release is executed, which is exactly why it's important not to permit a pre-filing release like that and hence, as I tried to say, a judgment that is based on that release, as Judge Cratchit's question was suggesting, to bind the government or another relator. It's important precisely because those procedural protections are not a pre-filing release, which is why those releases should only be enforced in a narrow circuit. That's all I have, Your Honors. If there are no further questions.
judges: William B. Traxler, Jr., Albert Diaz, Gina M. Groh